UNITED STATE DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KINGSPAN INSULATED PANELS, INC.
a Florida Corporation,

       Plaintiff,

vs.                                                      Civil Action No: 1:15-cv-01023
                                                         HON. GORDON J. QUIST
CENTRIA GP,
a Pennsylvania General Partnership
And
CENTRIA, INC.,
a Pennsylvania Corporation,

       Defendants.

_____/

## SECOND AMENDED COMPLAINT
## AND DEMAND FOR JURY TRIAL

     Plaintiff, Kingspan Insulated Panels, Inc. ("Kingspan"), for its Second Amended

Complaint against the Defendants, Centria, Inc. and Centria GP (collectively "Centria") states as

follows:

### THE PARTIES

     1.    Plaintiff Kingspan is a corporation organized under the laws of the State of

Florida, with a principal place of business at 726 Summerhill Drive, Deland, Florida 32724.

2.      On information and belief, Defendant Centria, Inc. is a corporation organized under the laws of the State of Delaware, with a principal place of business at 1005 Beaver Grade Road, Coraopolis, PA 15108-2964.

3.      On September 6, 2014, Kingspan filed Plaintiff's Motion to Add Party (Dkt. No. 38) and Brief in Support of Motion to Add Party (Dkt. No. 39), through which Kingspan moved, per the request and agreement of Centria (Dkt. No. 39-1), for addition of Centria GP as to all counts.  On September 8, 2016, the court entered an Order granting Plaintiff's Motion to add Centria GP as a defendant to all counts.  See Dkt. No. 41.

4.      On information and belief, Defendant Centria GP is a General Partnership under the laws of the State of Pennsylvania, with a principal place of business at 10934 N. Sam Houston Parkway W., Houston, TX 77064.

5.      On information and belief, Defendant Centria GP can be served through its registered agent, National Corporate Research, Ltd., located at 229 Brookwood Drive, Suite 14, South Lyon, MI 48178.

## JURISDICTION AND VENUE

6.      This Second Amended Complaint is asserted under the patent laws of the United States, 35 U.S.C. §§ 1, et seq., and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  This Court has jurisdiction over the subject matter of this Second Amended Complaint pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2201.

7.      Kingspan seeks a declaratory judgment that the claims of U.S. Patent No. 8,261,499 ("the '499 patent"), U.S. Patent No. 8,474,202 ("the '202 patent") and U.S. Patent

No. 8,661,756 ("the '756 patent") are invalid and not infringed by Kingspan.  An actual controversy over the infringement and validity of the '499 patent, '202 patent and '756 patent exists between Kingspan and Centria.  Kingspan also seeks a claim for tortious interference of business relationship and expectancy.

8.     The Court has supplemental jurisdiction under 28 U.S.C. § 1367 for the State and Common Law claims.

9.     Venue in this Court is proper pursuant to 28 U.S.C. §§ 1391(b) and (c) and § 1400.

## FACTUAL BACKGROUND

10.     The USPTO issued U.S. Patent No. 8,261,499 titled "Extruded Seal Plate for Horizontal Insulated Composite Architectural Panel Vertical End Joints," on September 11, 2012.  Centria is the Assignee of the '499 Patent.  See Dkt. No. 10-1, the '499 patent.

11.     The USPTO issued U.S. Patent No. 8,474,202 titled "Extruded Seal Plate for Horizontal Insulated Composite Architectural Panel Vertical End Joints," on July 2, 2013.  Centria is the Assignee of the '202 Patent.  See Dkt. No. 10-2, the '202 patent.

12.     The USPTO issued U.S. Patent No. 8,661,756 titled "Insulated Metal Vertical Joint Insert," on March 4, 2014.  Centria is the Assignee of the '756 Patent.  See Dkt. No. 10-3, the '756 patent.

13.     Kingspan is the largest manufacturer of insulated panels in North America.

14.     Architectural Glass and Metals, Inc. ("AGM") is a specialty contractor with offices in Kalamazoo, Michigan and Grand Rapids, Michigan that provides total building exterior solutions.

15.     Clark Construction Company ("Clark") is a construction company with offices in Lansing, Michigan and Southfield, Michigan.

16.     On or about February 11, 2015, Centria sent a cease and desist letter to Kingspan alleging infringement of Centria's U.S. Patent No. 8,661,756.  See Dkt. No. 10-4, Centria's February 11, 2015 correspondence.

17.     On or about March 2, 2015, Kingspan sent responsive correspondence to Centria's counsel stating that "Kingspan is practicing the prior art" and, as such, does not infringe the '756 patent.  See Exhibit A, Kingspan's March 2, 2015 correspondence.

18.     Over the span of several months, the parties communicated regarding Centria's allegations.  Kingspan notified Centria that Kingspan's insulated panels do not infringe any of Centria's asserted patents and/or that its patent(s) were invalid.

19.     Centria refused to stand down, as noted by Dkt. No. 1-2, Centria's September 28, 2015 correspondence.

20.     Centria and Kingspan are and have been the predominant players in the manufacturing of insulated panels for application in North America.

21.     Centria was a direct competitor with Kingspan on the Oaknet School Project in 1999 and the Livingston Elementary Job in 2008.  See Exhibit B, Oaknet School Project technical documents, and Exhibit C, Livingston Elementary Job technical documents.

22.     Upon information and belief, Centria attempted to have Kingspan removed from the Oaknet School Project partway through the installation of Kingspan's products.

23.     As part of the ongoing and numerous contacts between Kingspan and Centria and over the course of over 25 years through bidding on many of the same jobs, Centria and

Kingspan have become aware of the other company's offerings, including the offerings identified in Centria's February 11, 2015 letter.

24.     These offerings, in addition to well-known prior art, were put before Centria, yet Centria ignored the clear invalidity positions and non-infringement positions.

25.     Kingspan and AGM have a business relationship.

26.     Over the last year, and previous to the Michigan State Project, Kingspan and AGM have corroborated on three other projects.  Exhibit D, quotations for previous projects.

27.     In each project that Kingspan and AGM have corroborated, AGM initiates the working relationship by sending a request for a quotation on a specific project.  Exhibit E, requests for quotations.  Kingspan responds by sending a quotation for the project, and AGM either signs the quote or sends a Letter of Intent (LOI) to accept the quotation pending acceptance of AGM's bid from the contractor.  Exhibit D, quotations.  Once the contractor accepts AGM's bid, the agreement between AGM and Kingspan is solidified.

28.     On or about July 29, 2015, Kingspan provided a quote to AGM for insulated panels totaling more than $770,000 in materials and labor for a construction project for Michigan State University in East Lansing known as the "Michigan State Project" or "MSU Bioscience Project."  See Exhibit I, Quote # 20014494 REV 1 .

29.     Between July 29, 2015 and September 28, 2015, Kingspan conducted meetings, participated in numerous teleconferences, and regularly communicated by email with AGM to review and evaluate Kingspan's quote to AGM and AGM's needs for the Michigan State Project.

30.     For example, on September 16, 2015, Kingspan attended a meeting at the MSU Grand Rapids Research Center regarding the MSU Job Trailer Schedule.  The photo attached at Exhibit G describes the bid description for the work and the responsible construction for the Michigan State Project.  Under the bid pack at row 7B, is the bid description EXTR Metal Panels and Louvers.  The contractor is identified as AGM.

31.     On September 25, 2015, AGM issued correspondence to Kingspan indicating that "[p]ending final Owner / AE approval and receipt of subsequent subcontract agreement; it is the intent of [AGM] to purchase the insulated Metal Wall Panels from [Kingspan] as described in the aforementioned quote." The correspondence of September 25, 2015 is Dkt. No. 1-1.

32.     Upon information and belief, the quote by Kingspan, as a supplier, was used and relied upon by AGM in a quote that AGM, as subcontractor, then provided to Clark Construction, as the general contractor, for the Michigan State Project.

33.     On or about the morning of September 28, 2015, AGM made a presentation to representatives of Clark in East Lansing, Michigan regarding their bid for the Michigan State Project. The meeting on September 28, 2105 was attended by representatives of AGM, Clark, Michigan State University, and Michigan State University's project management team.

34.     At the conclusion of the meeting on September 28, 2015, the understanding and business expectancy of Kingspan and AGM, based on the discussions with the representatives of Clark, was that AGM's bid would be accepted by Clark, that AGM would be awarded the Michigan State Project, that Kingspan would supply insulated panels to AGM for use by AGM in its work for Clark on the Michigan State Project, and that Kingspan,

AGM, and Clark would move forward with commencement of the Michigan State Project soon after the September 28, 2015 meeting.  See Exhibit H.

35.     Upon information and belief, Centria was involved in a similar business relationship with a subcontractor who submitted a bid on the Michigan State Project.

36.     Upon information and belief, Kingspan and Centria were the only companies capable of supplying the products necessary for the Michigan State Project and while there may have been more than two subcontractors that submitted bids to Clark Construction, the only suppliers of insulated panels to the subcontractors were Kingspan and Centria.

37.     Upon information and belief, Centria and its subcontractor were the remaining bidders on the Michigan State Project.  Upon information and belief, after the meeting on the morning of September 28, 2015, Clark Construction informed Centria's subcontractor (who then informed Centria) that AGM/Kingspan would be receiving the contract for the Michigan State Project and not Centria and its subcontractor.

38.     Upon information and belief, in response to being informed that the Michigan State Project would be awarded to AGM and Kingspan and not to Centria, in the afternoon of September 28, 2015, shortly after the AGM/Clark Construction meeting on the morning of September 28, 2015, Richard A. Mowrey, Centria's Executive Vice President of Business Development, sent correspondence (Dkt. No. 1-2) to representatives of Clark and AGM threatening patent infringement litigation based on three patents, including U.S. Patent Nos. 8,261,499, 8,474,202, and 8,661,756 ("the Asserted Patents"). Specifically, the correspondence stated as follows:



**CENTRIA**

September 28, 2015

Architectural Glass and Metals, Inc. - Byron Center, Michigan

Clark Construction Company - Lansing, Michigan

**Subject:**   **Michigan State Project - Grand Rapids Michigan**
**CENTRIA Patents #US 8,261,499, #US 8,474,202, and**
**#US 8,661,756**

To Whom it May Concern:

We are sending this letter to inform certain parties that there could be patent
infringement on CENTRIA's Dimension Series Pressure Equalized Seal Plate design/
parts and CENTRIA's Insulated Metal Vertical Joint design/parts.

Companies who market, quote, manufacture, fabricate, contract for, approve or install
would be infringing if these designs/parts are copied.  CENTRIA intends to
enforce/defend its patent rights and sue any and all parties that infringe.

Please cease and desist any infringement on our patent.

Sincerely,

Richard A. Mowrey
Executive Vice President
Business Development

39.    Both of the identified products in Centria's September 28, 2015
correspondence are products in competition with Kingspan's insulated panels.

40.    Upon information and belief, at the time of sending the September 28th
correspondence (Dkt. No. 1-2), Mr. Mowrey and Centria knew or should have known that
Kingspan's insulated panels do not infringe any valid claim of the Asserted Patents.

41.     Upon information and belief, at the time of sending the September 28th correspondence (Dkt. No. 1-2), Mr. Mowrey and Centria knew or should have known that one or more claims of the Asserted Patents are invalid.

42.     Upon information and belief, Mr. Mowrey and Centria knew, at the time of sending the September 28th correspondence (Dkt. No. 1-2), of Kingspan's and AGM's business relationship and expectancy with respect to Clark regarding the Michigan State Project.

43.     Upon information and belief, Mr. Mowrey and Centria sent the September 28th correspondence (Dkt. No. 1-2) to intentionally and improperly interfere with Kingspan's and AGM's business relationship and expectancy with Clark regarding the Michigan State Project and to induce or cause a breach, disruption, and/or termination of Kingspan's and AGM's business relationship and expectancy with Clark regarding the Michigan State Project.

44.     As a result of the September 28, 2015 cease and desist letter, Clark Construction required Kingspan to sign an indemnification agreement granting indemnity to all parties in the Michigan State Project for Kingspan to proceed forward with its  award of the Michigan State Project.

45.     Upon information and belief, requiring a supplier of parts or materials to sign an indemnification agreement granting indemnity to all parties (including subcontractors and contractors) involved in a project is not common practice in this industry.

46.     Although Kingspan would have been allowed to proceed forward with the award of the Michigan State Project had they signed the indemnification agreement, the

indemnification agreement imposed unacceptable risk on Kingspan.  When Kingspan was unable to sign the proposed indemnification agreement, Clark Construction informed AGM that it would not be awarding AGM/Kingspan the Michigan State Project.  AGM then informed Kingspan that it would not be finalizing the agreement to purchase the Insulated Metal Wall Panels as described in Quote # 20014494 REV 1.

47.     Upon information and belief, since Centria and its subcontractor were the only other bidders for the Michigan State Project, the termination of the contract between Clark Construction and AGM/Kingspan secured the contract for Centria.

48.     As a result of the loss of the contract between AGM and Clark Construction, Kingspan has incurred damages based on the quote to AGM for insulated panels totaling more than $770,000 in materials and labor, less Kingspan's costs.  See Exhibit F and Exhibit I.

49.     In addition, Centria's letter of September 28, 2015 to AGM caused damage of at least a breach, and possibly a termination, of the business relationship between Kingspan and AGM.

50.     Due to Centria's letter of September 28, 2015, Kingspan's good name has been tarnished in the industry, and its ongoing business relationship with AGM has appeared to be terminated, at least for the present time.

## COUNT I:  DECLARATORY JUDGMENT OF NON-INFRINGEMENT
## OF U.S. PATENT NO. 8,261,499

51.     Kingspan realleges and incorporates herein the allegations in paragraphs 1 through 50 above.  An actual and justiciable controversy exists between Kingspan and Centria as to whether the claims of the '499 Patent are infringed by Kingspan.

52.     Kingspan has not in the past, and does not now, make, use, sell, offer to sell, or import any products that infringe any valid claim of the '499 patent, either directly or indirectly, and Kingspan does not and has not infringed, contributed to the infringement of, or induced infringement of any valid claim of the '499 patent either literally or under the doctrine of equivalents.

53.     In its correspondence of March 2, 2015 (Exhibit A) and additional correspondences, Kingspan notified Centria that its products do not infringe Centria's patents, including the '499 patent.

54.     The Kingspan product was alleged to infringe in Centria's cease and desist letter of September 28, 2015 ( Dkt. No. 1-2) is Kingspan's insulated panels including a backing plate having a 22-gauge profile mending plate approximately 7 inches wide having the ends downturned approximately 5/8 inch ("Accused Product").  See Exhibit J.

55.     The mending plate of the Accused Product is flat and planar with downturned ends.

56.     Claim 1 of the '499 patent recites a seal plate that includes a pair of channels extending at least a portion of the length of the elongated body.  The pair of channels is adapted to communicate with an exterior atmosphere such that the pressure within the

recessed channel is equalized to the exterior pressure.  Claim 1 further requires that each sealant receiving portion on the seal plate include a recessed pocket configured to receive a bead of sealant. See Dkt. No. 10-1.

57.     The Accused Product does not infringe any claim of the '499 patent, because the Kingspan mending plate does not include the claimed recess channels or the recessed pockets that receive a bead of sealant as required by independent Claim 1 of Centria's '499 patent.  Since Kingspan does not infringe independent Claim 1 of the '499 patent, Kingspan also does not infringe dependent Claims 2-4 based on the dependencies of Claims 2-4 from independent Claim 1.

58.     Accordingly, Kingspan seeks a judgment declaring that it has not infringed, and is not infringing, the claims of the '499 patent.

**COUNT II:  DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 8,474,202**

59.     Kingspan realleges and incorporates herein the allegations in paragraphs 1 through 58 above.

60.     An actual and justiciable controversy exists between Kingspan and Centria as to whether the claims of the '202 Patent are infringed by Kingspan.

61.     Kingspan has not in the past, and does not now, make, use, sell, offer to sell, or import any products that infringe any valid claim of the '202 patent, either directly or indirectly, and Kingspan does not and has not infringed, contributed to the infringement of, or induced infringement of any valid claim of the '202 patent either literally or under the doctrine of equivalents.

62.     In its correspondence of March 2, 2015 (Exhibit A) and additional correspondences, Kingspan notified Centria that its products do not infringe Centria's patents, including the '202 patent.

63.     The Kingspan product alleged to infringe in Centria's cease and desist letter of September 28, 2015 (Dkt. No. 1-2) is Kingspan's insulated panels including a backing plate having a 22-gauge profile mending plate approximately 7 inches wide having the ends downturned approximately 5/8 inch ("Accused Product").  See Exhibit J.

64.     The mending plate of the Accused Product is flat and planar and does not include any recessed channels.

65.     Claims 1 and 8 of the '202 patent recite a seal plate having a first and second recess channel extending at least a portion of the length of the elongated body.  The recess channel is positioned between the at least one inner seal and the first outer seal.  The second recess channel is positioned between the one at least inner seal and the second outer seal.  The recess channels are adapted to communicate with an exterior atmosphere such that a pressure within the first recess channel and the second recess channel is equalized to the exterior atmosphere.  See Dkt. No. 10-2.

66.     The Accused Product does not infringe any claim of the '202 patent, because the Kingspan mending plate fails to include any recessed channels as required by the seal plate in independent Claims 1 and 8 of Centria's '202 patent.  Since Kingspan does not infringe either of independent Claims 1 and 8 of the '202 patent, Kingspan also does not infringe dependent Claims 2-7 and 9-17 based on the dependencies of Claims 2-7 and 9-17 from one of independent Claims 1 and 8.

67.     Accordingly, Kingspan seeks a judgment declaring that it has not infringed, and is not infringing, the claims of the '202 patent.

## COUNT III:  DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 8,661,756

68.     Kingspan realleges and incorporates herein the allegations in paragraphs 1 through 67 above.   An actual and justiciable controversy exists between Kingspan and Centria as to whether the claims of the '756 Patent are infringed by Kingspan.

69.     Kingspan has not in the past, and does not now, make, use, sell, offer to sell, or import any products that infringe any valid claim of the '756 patent, either directly or indirectly, and Kingspan does not and has not infringed, contributed to the infringement of, or induced infringement of any valid claim of the '756 patent either literally or under the doctrine of equivalents.

70.     In its correspondence of March 2, 2015 (Exhibit A) and additional correspondences, Kingspan notified Centria that its products do not infringe Centria's patents, including the '756 patent.

71.     The Kingspan product alleged to infringe in Centria's cease and desist letter of September 28, 2015 (Dkt. No. 1-2) is Kingspan's insulated panels including a 2 ½ inch block spline disposed between 3 inch Designwall 4000 Flat Wall Panels.  The 2 ½ inch block spline is rectangular and is exposed to the atmosphere through a ½ inch gap between 3 inch Designwall 4000 Flat Wall Panels on an outer side of the Designwall 4000 Flat Wall Panels. See Exhibit J.

72.     Claims 5 and 6 of the '756 patent recite a facer that is secured to, or is a portion of, an insert positioned between first and second panels at a joint.  Claim 6 further requires that the facer of the insert engage the first and second panels with the body of the insert having a pair of front chamfered portions to define drain cavities. See Dkt. No. 10-3.

73.     The Accused Product does not infringe any valid claim of the '756 patent, because the Kingspan 2 ½ inch block spline does not include the facer as required by dependent Claim 5 and independent Claim 6 of Centria's '756 patent.  Since Kingspan does not infringe independent Claim 6 of the '756 patent, Kingspan also does not infringe dependent Claims 7 and 9 based on the dependencies of Claims 7 and 9 from independent Claim 6.

74.     Accordingly, Kingspan seeks a judgment declaring that it has not infringed, and is not infringing, any valid claim of the '756 patent.

## COUNT IV:  DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 8,661,756

75.     Kingspan realleges and incorporates herein the allegations in paragraphs 1 through 74 above.

76.     On information and belief, at least claims 1-5 and 8 of the '756 Patent are invalid for failure to meet the conditions for patentability specified in 35 U.S.C. §§102, 103 and 112, as follows:

A.     One or more claims of the '756 Patent are anticipated under 35 U.S.C. § 102(a) because the "invention" was known or used by others in this country, or patented or

described in a printed publication in this or a foreign country, before the "invention" thereof by the applicant for patent;

B.      One or more claims of the '756 Patent are anticipated under 35 U.S.C. § 102(b) because the "invention" was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States;

C.      One or more claims of the '756 Patent are obvious under 35 U.S.C. § 103, because the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the "invention" was made to a person having ordinary skill in the art to which said subject matter pertains;

D.      One or more claims of the '756 Patent are invalid for failing to satisfy the enablement requirement under 35 U.S.C. § 112 because the '756 Patent does not contain a written description of the "invention," and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same; and

E.      One or more claims of the '756 Patent are invalid for failing to satisfy the written description requirement under 35 U.S.C. § 112 because the '756 Patent does not contain a written description of the "invention," and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same.

77.    For example, Kingspan's Benchmark was installed in the Oaknet School Project in 1999.  The Benchmark product that was installed includes 30 inch wide, Designwall 2000H panels that have a completed panel size of 24 feet, 11 and one-half inches. The liner sheet is approximately one-quarter inches shorter than the face sheet on the ends of the panel.  The foam is shaved at the edge of the panel to keep it even with the liner edge. The vertical joint gasket is made of extruded sponge EPDM and matches the benchmark print.  The technical information for the Oaknet School Project is attached at Exhibit B.

78.    For example, Kingspan's Benchmark was installed in the Livingston Elementary Job in 2008.  The Benchmark product that was installed includes Designwall 2000H panels.  The liner sheet is approximately one-quarter inches shorter than the face sheet on the ends of the panel.  The foam is shaved at the edge of the panel to keep it even with the liner edge.  The vertical joint gasket is made of dual durometer Santoprene and matches the benchmark print.  The technical information for the Livingston Elementary Job is attached at Exhibit C.

79.    Both of Kingspan's panels and backers sheets of the Benchmark Oaknet School project in 1999 and Livingston Elementary job in 2008 render the '756 patent invalid. Each of the panels and backers sheets of the Oaknet School project and the Livingston Elementary job includes all of the features of Claims 1-4 and 8 of the '756 patent.  Thus, Claims 1-4 and 8 of the '756 patent are invalid.  An invalidity chart aligning the features of the panels and backers sheets of the Benchmark Oaknet School project in 1999 and Livingston Elementary job in 2008 with the claim elements of the '756 patent is attached at Exhibit K.

17

80.     Accordingly, Kingspan seeks a judgment declaring that the '756 Patent is invalid.

## COUNT V: TORTIOUS INTERFERENCE WITH A CONTRACT OR A BUSINESS RELATIONSHIP OR EXPECTANCY

81.     Kingspan realleges and incorporates herein the allegations in paragraphs 1 through 80 above.

82.     Kingspan's long working history with AGM is sufficient to show an ongoing business relationship between the two companies.  The effort of both Kingspan and AGM to undertake at least two meetings regarding the needs for the Michigan State Project and AGM's Kingspan's quote evidences both parties' willingness to work together to continue their business relationship.  Further, AGM's acceptance of Kingspan's quote in the Michigan State Project sufficiently demonstrates that AGM desired the ongoing business relationship between Kingspan and AGM to continue.

83.     The Michigan State Project was proceeding in the expected manner – Kingspan had provided AGM a quote for insulated panels totaling more than $770,000 in materials and labor, AGM had provided Kingspan with the correspondence of September 25, 2015 indicating that that "[p]ending final Owner/AE approval and receipt of subsequent subcontract agreement, it is the intent of [AGM] to purchase the insulated Metal Wall Panels from [Kingspan]," and, after the conclusion of AGM's September 28, 2015 presentation, Clark Construction indicated that AGM's (and Kingspan's) bid would be accepted by Clark Construction and that Kingspan, AGM, and Clark Construction would move forward with commencement of the Michigan State Project soon after the September 28, 2015 meeting.

*See* Section I.  Thus, Kingspan, and any reasonable party in Kingspan's shoes, would have a business expectancy with both AGM and Clark Construction.

84.    Clark Construction's indication that AGM's/Kingspan's bid would be accepted by Clark Construction following the conclusion of AGM's September 28, 2015 presentation escalates Kingspan's business expectation to far more than mere wishful thinking, and, more accurately, a reasonable likelihood or probability.

85.    Upon information and belief, Centria knew of Kingspan's business relationship with AGM, of AGM's relationship with Clark, and of Kingspan's and AGM's business expectancy regarding the award of business for the Michigan State Project.

86.    Upon information and belief, Centria, through it subcontractor, was aware that it was the only other party that submitted a bid to Clark Construction on the Michigan State Project.  Upon information and belief, after the meeting of September 28, 2015, Clark Construction informed Centria's subcontractor (who then informed Centria) that AGM and Kingspan would be receiving the contract for the Michigan State Project, not Centria and its subcontractor.  Thus, Centria had knowledge of the business relationships and expectancies between Kingspan and AGM and between Kingspan and Clark Construction.

87.    Upon information and belief, Centria intentionally and improperly interfered with Kingspan's business relationship with AGM, with AGM's business relationship with Clark, and with Kingspan's and AGM's business expectancies regarding the award of business for the Michigan State Project by knowingly sending the objectively baseless September 28th correspondence (Dkt. No. 1-2) and improperly threatening patent infringement litigation against AGM and Clark.

88.     Upon information and belief, Centria's pre-lawsuit contacts with AGM and Clark Construction are objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits: (1) Centria's '202 and '499 patents are both not infringed by Kingspan's accused product, and (2) Centria's '756 patent is invalid.

89.     Kingspan alerted Centria of both its non-infringement of the '202 and '499 patents and the invalidity of the '756 patent in communications sent after the February 11, 2015 cease and desist letter from Centria but before the September 28, 2015 cease and desist letter that ultimately harmed Kingspan's business relationship and expectancy with both AGM and Clark Construction.  Thus, upon information and belief, Centria was aware of the inaccuracy of its claims.   In the least, upon information and belief, by not further investigating its allegations against Kingspan, Centria acted with reckless disregard for the accuracy of its allegations.

90.     Upon information and belief, Centria sent the September 28, 2015 cease and desist letters to AGM and Clark Construction for the sole purpose of terminating the contract between Clark Construction and AGM/Kingspan.  Upon information and belief, after the meeting of September 28, 2015 between AGM and Clark Construction, Clark Construction informed Centria's subcontractor (who then informed Centria) that AGM/Kingspan would be receiving the contract for the Michigan State Project.  Centria only sent its September 28, 2015 cease and desist letter *after* it learned that AGM/Kingspan would be receiving the contract.  Upon information and belief, Centria knew that its subcontractor (and Centria) was the only other bidder for the Michigan State Project, and, as such, if Centria could persuade

Clark Construction and AGM to renege on the contracts to Kingspan, the contract between Clark Construction and Centria's subcontractor would be secured.

91.     Upon information and belief, because Centria knowingly sent objectively baseless letters of September 28, 2015 to AGM and Clark Construction, Clark Construction informed AGM that it would not be awarding AGM/Kingspan the Michigan State Project, and AGM informed Kingspan that it would not be finalizing the agreement to purchase the Insulated Metal Wall Panels as described in Quote # 20014494 REV 1.

92.     Centria's intentional and improper interference with Kingspan's business relationship and business expectancy has damaged Kingspan in an amount greater than $75,000, exclusive of interest and costs, including, but not limited to, the disruption and/or loss of expected business for the Michigan State Project totaling more than $770,000 in materials and labor for the Michigan State Project.

93.     Upon information and belief, in addition to financial damages caused by Centria's intentional and improper interference with Kingspan's business relationship and business expectancy, Centria's objectively baseless letter of September 28, 2015 to AGM caused damage of at least a breach, and possibly a termination, of the business relationship between Kingspan and AGM.  Due to Centria's objectively baseless letter of September 28, 2015, Kingspan's good name has been tarnished in the industry, and its ongoing business relationship with AGM has appeared to be terminated, at least for the present time.

## PRAYER FOR RELIEF

WHEREFORE, Kingspan requests the following relief:

A.    Declare that Kingspan has not infringed, either directly or indirectly, and is not infringing, either directly or indirectly, any valid and enforceable claim in the '499 Patent, the '202 Patent, or the '756 Patent;

B.    Declare that the '756 Patent is invalid and unenforceable;

C.    Enjoin Centria, its officers, agents, servants, employees, attorneys, and representatives, and any successors and assigns thereof, from charging or asserting infringement of any claim of the '499, '202 and '756 Patents against Kingspan or anyone in privity with Kingspan;

E.    Declare that this is an exceptional case under 35 U.S.C. § 285 due to Centria's conduct;

F.    Entry of a judgment in its favor awarding Kingspan its actual damages resulting from Centria's intentional and improper interference with Kingspan's business relationship and business expectancy;

G.    Entry of an order directing Centria to retract its September 28th correspondence to AGM and Clark;

H.    Entry of a judgment awarding Kingspan its costs and attorney's fees, as permitted by law; and

I.    Entry of a judgment awarding Kingspan such other and further relief as the Court may deem just and proper.

**<u>JURY DEMAND</u>**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues triable of right by a jury.

Dated:  September 14, 2016          By:     s/ George D. Moustakas /
                                                     George D. Moustakas (P41631)
                                                     Michael P. Doerr (P61075)
                                                     Stephanie L. Dowdy (P77225)
                                                     HARNESS, DICKEY & PIERCE, PLC
                                                     5445 Corporate Drive, Suite 200
                                                     Troy, MI 48098-2683
                                                     (248) 641-1600
                                                     248) 641-0270  Fax
                                                     gdmoustakas@hdp.com
                                                     mdoerr@hdp.com
                                                     sdowdy@hdp.com

## <u>CERTIFICATE OF SERVICE</u>

       The undersigned hereby certifies that on September 14, 2016, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will be served by operation of the Court's electronic filing system and email upon the following:

Bryan R. Walters (P58050)
VARNUM LLP
Attorneys for Defendant
333 Bridge Street, NW
P.O. Box 352
Grand Rapids, MI 49501-0352
616/336-6000
brwalters@varnumlaw.com

**FISH & RICHARDSON, P.C.**
Thomas M. Melsheimer (admission pending)
Texas State Bar No. 13922550
Thomas B. Walsh, IV (admission pending)
Texas State Bar No. 00785173
M. Brett Johnson (admission pending)
Texas State Bar No. 00790975
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5071
melsheimer@fr.com
walsh@fr.com
johnson@fr.com

*Attorneys for Defendant Centria, Inc.*

/ George D. Moustakas /
George D. Moustakas (P41631)